[No. 24457. Department One. June 23, 1933.]

HENRY O. MIETHKE *et al., Respondents,* v. PIERCE
COUNTY, *Appellant.*[1]

*Bertil E. Johnson* and *D. D. Schneider,* for appellant.

*Palmer, Askren & Brethorst* and *B. E. Lutterman,*
for respondents.

HOLCOMB, J.—Respondents are nurserymen and are
owners of a growing nursery stock in Pierce county.
Pierce county assessed and levied a tax on their
nursery stock as personal property, and this action
was begun by respondents to recover money paid under

[1]Reported in 23 P. (2d) 405.

protest to the county for personal taxes which respondents claim were wrongfully assessed and levied by the county upon certain shrubs, trees and plants cultivated and growing upon their land.

They allege in their complaint that they are the owners of a certain tract of land situated in Pierce county upon which, during the year 1931, they were growing a crop of deciduous and evergreen trees, which crop was being grown from seed, cuttings and grafts, and was not marketable in 1931, and will not become marketable for a period of from three to fifteen years; that, on March 15, 1932, they paid the personal property tax assessed by Pierce county under protest. They allege that the personal property on which the tax was levied had not been purchased either in or out of the state of Washington, but was being grown by them from seeds, cuttings and grafts, and that the statute does not authorize the county to assess and levy this tax on it because it is a growing crop. They also allege that Rem. Rev. Stat., § 11135, provides, in part, as follows:

"In assessing any tract or lot of real property, the value of the land, exclusive of improvements, shall be determined; also, the value of all improvements and structures thereon and the aggregate value of the property, including all structures and other improvements, excluding the value of crops growing on cultivated lands."

That the crop of trees and shrubs so taxed was a crop growing on cultivated lands, and was not severed from but was attached to and a part of the real property, and that the tax was therefore assessed and levied in violation of the cited statute.

They further allege that the only growing crops which are assessed by Pierce county are the crops which are being grown by nurserymen; that, through-

out Pierce county and on lands adjoining that of respondents, there are grown by farmers similar deciduous and evergreen trees; annual and perennial plants, such as shrubs, vines, berries, bushes, bedding stock, flowers, vegetables and grapes; apple, pear, peach, prune, cherry and apricot trees, and grain such as wheat, oats, rye, barley and corn; that Pierce county has not assessed nor levied a tax on any of such growing crops excepting that owned by nurserymen, and until after such crops have been severed from the soil and harvested and in the possession of the owners on the 1st day of March following harvest.

That taxing as personal property the growing trees and shrubs in the possession of the nurserymen and not taxing the same or similar growing of trees and shrubs in the possession of others than nurserymen, is in violation of the constitution of Washington and the United States, and operates as fraud upon the rights of nurserymen; that the attempted classification is arbitrary and not uniform, and that the discrimination against growing crops of nurserymen is intentional, arbitrary and vicious in principle; that Pierce county has classified for purposes of taxation property owned by nurserymen, but has not included in such classification property of the same kind and in the same condition, used for the same purpose, that is owned by others than nurserymen; that the attempted classification was not based upon any inherent characteristics of the property taxed, but upon the incidents of its ownership; and that the county during the year 1931 did tax the property of respondents under a different rule because they were known as nurserymen, and that the county did levy a tax during 1931 on the property owned by nurserymen, but exempted the same kind of property owned by others who were not styled nurserymen.

The property was assessed by the assessing officers of Pierce county under and by virtue of the provisions of Rem. Rev. Stat., § 11129, which reads:

"Whoever owns, or has in his possession or subject to his control, any goods, merchandise, grain or produce of any kind, or other personal property within this state, with authority to sell the same, which has been purchased either in or out of this state, with a view to being sold at an advanced price or profit, or which has been consigned to him from any place out of this state for the purpose of being sold at any place within the state, shall be held to be a merchant, and when he is by this act required to make out and to deliver to the assessor a statement of his other personal property, he shall state the value of such property pertaining to his business as a merchant. No consignee shall be required to list for taxation the value of any property the product of this state, nor the value of any property consigned to him from any other place for the sole purpose of being stored or forwarded, if he has no interest in such property nor any profit to be derived from its sale. The stock of nurserymen, growing or otherwise, shall be listed and assessed as merchandise."

It will be observed that § 11135, referred to in the complaint of respondents, is a part of the same taxing statute.

The sole question submitted for our decision is whether or not the stocks of nurserymen, growing or otherwise, shall be listed and assessed as merchandise under § 11129, *supra;* whether that section is constitutional; and whether such property is assessable under § 11135, *supra.*

The trial judge, after hearing argument on the demurrer of appellant to the complaint, among other things said:

"I am unable to distinguish between a 'crop' of seeds where two seasons are required to produce the seeds, and a 'crop' of holly trees or shrubs which may take several or many seasons; and the word 'crop,' it seems to me, must be taken in a general and not a restricted sense, and if as suggested above, it did take two years to get a crop of cabbage seed and seven years to grow a marketable holly tree, I am unable to determine why one should come under the classification of 'crop' and not the other, although generally speaking, in a popular sense, the term is most frequently applied to products of the soil harvested annually. . . .

"Section 52 [§ 11135, *supra*] clearly exempts growing crops on cultivated lands. If nursery stock is a crop, then this statute exempts it, and if we hold it is not a crop but admit that it is a product of the soil suitable for trade or consumption, then we exempt one product of husbandry and tax the other, and there is no inherent difference in the products themselves as such. Each springs from the soil, each is the product of cultivation and human effort, looking toward maturity and harvest; the only difference being that grain commonly would be harvested within a season of a year, while nursery stock, depending upon its kind and character, might reach maturity or the time when it is severed from the soil, in one or many seasons. So that either section 25 [§ 11129, *supra*] is unconstitutional, or section 52 [§ 11135, *supra*] makes nursery stock exempt. In either event the tax levy is unlawful. Defendant's demurrer, therefore, should be overruled."

With due deference to the trial judge, we are unable to agree either with his reasoning or his conclusion.

As was well said by him, that the legislature may classify for the purposes of taxation, is, of course, conceded.

■■ Lexicographers define a "nursery" as:

"A place where trees, shrubs, vines, etc., are propagated for transplanting or for use as stocks for grafting." Webster.

46 C. J. 836.

They also define a "crop" as:

"That which is cropped, cut or gathered from a single field or of a single kind; or in a single season or part of a season; the product of the field, whether gathered or growing; harvest, . . . ." Webster.

"A crop is primarily some product of the soil gathered during a single year, and when a man speaks of his crop he will ordinarily be understood to mean a crop raised by himself; and yet the words do not of themselves import this meaning, but may be taken to mean a crop that is a portion of the present year's growth of the article in question, which has become his by purchase as well as by production." 2 Words & Phrases, 1755.

"The word crop is derived from the old English 'croppe' signifying the top of a plant. It is primarily some product of the soil and has been defined as everything produced from the earth by annual planting, cultivation and labor; and it may mean either a gathered or growing crop. As thus limited the word is practically synonymous with emblements and hence does not include the fruits of perennial trees, but taken in its most comprehensive sense it includes grasses and the fruits of trees." 8 R. C. L. 355.

"The word 'crops,' in its more general signification, means all products of the soil that are grown and raised annually and gathered during a single season. In this sense the term includes both fructus industriales and fructus naturales. The word is also used, however, in a more restricted sense, as synonymous with fructus industriales or emblements. Everything produced from the earth by annual planting, cultivation and labor." 17 C. J. 378.

In *Cottle v. Spitzer*, 65 Cal. 456, 4 Pac. 435, 52 Am. Rep. 305, that court defined "growing crops" as including only those crops which require an annual planting or sowing, or an annual harvesting, and therefore held that fruit trees growing upon land are not

growing crops within the meaning of the provision of the California constitution exempting such crops from taxation. To the same effect is *Kuehn v. City of Antigo*, 139 Wis. 132, 120 N. W. 823, 131 Am. St. 1043.

In *Burley Tobacco Growers' Co-op. Assn. v. City of Carrollton*, 208 Ky. 270, 270 S. W. 749, that court held that growing crops, whether regarded as realty or personalty, are taxable unless exempted by their constitution and statute. It was there held that a tobacco crop, under a statute exempting from taxation crops grown in the year in which the assessment was made, was not exempt, but was taxable in the following year after severance.

It is a well settled rule that statutes exempting persons or property from taxation are to be strictly construed, and that exemptions are not to be extended by judicial construction to property other than that designated by law. *Thurston County v. Sisters of Charity*, 14 Wash. 264, 44 Pac. 252.

It is also a well settled rule that:

"The legislature may exercise wide discretion in selecting and classifying the subjects of taxation, and may arrange and divide the various subjects of taxation into distinct classes . . . without violating the requirement of equality and uniformity, provided the tax is uniform on all members of the same class, and provided the classification is reasonable and provided it is not arbitrary." 61 C. J. 126.

*Puget Sound Power & Light Co. v. Seattle*, 117 Wash. 351, 201 Pac. 449. In this case (not cited by either party), we said:

"There is no vested right, either in a corporation or natural person, to have property assessed in any particular way. Such matters rest entirely within the control and discretion of the legislature. [Citing a case] It is a question of uniformity and equality in the classes. 'The classification of property for assessment,

where uniformity and equality exist in the classes, is a matter of legislative policy.' [Citing a case.]' "

and further, quoting approvingly from *Chicago & Northwestern R. Co. v. State*, 128 Wis. 553, 108 N. W. 557:

"The discretion of the legislature in this field is so broad that it is not competent for the court to mark the constitutional limitations of it other than at the farthest one might go without transcending all reason."

We also announced the principle in *Spaulding v. Adams County*, 79 Wash. 193, 140 Pac. 367, that statutes for assessment of property for taxation are to be liberally construed, so that property justly assessable shall not escape through technicalities.

It is also a well settled rule that persons seeking to exempt themselves from a tax must affirmatively show that they come within a class specifically made exempt from such taxation. *Oswald v. Johnson*, 285 Pac. (Cal. App.) 1067.

It is well known that growing crops are part of the real estate on which grown until grown and matured, or severed, either actually or constructively. *Churchill v. Ackerman*, 22 Wash. 227, 60 Pac. 406; *Snyder v. Harding*, 38 Wash. 666, 80 Pac. 789.

Under our system of taxation, land is assessed for taxation every two years, while crops are grown annually. Hence, a growing crop would be assessed as part of the real estate unless exempted by law. It was the evident intention of the legislature in enacting § 11135, *supra*, that it was for the uniform control of assessing officers. After such annual crop is matured or severed, it becomes part of the mass of personal property. There is no reason why the stock of nurserymen, growing or otherwise, should not be listed and assessed as merchandise the same as the stocks of mer-

chants which are assessed annually, as well as the lands on which situated. The legislature had the undoubted right and power to define nursery stocks as merchandise, and to exempt growing crops on cultivated lands.

Neither is there any discrimination or lack of uniformity in taxing nursery stock on the one hand and exempting such growing crops on the other. The reasoning in the *Puget Sound Power & Light* case, *supra*, and in *Ridpath v. Spokane Co.*, 23 Wash. 436, 63 Pac. 261, is contrary thereto. All annual growing crops on real estate are exempted by the law before us and all nursery stocks are taxed. Uniformity and equality exist *in those classes*, and what was to be taxed and what to be exempted, was purely a matter of legislative policy.

It is plain that there is no provision of our state, or of the Federal, constitution violated by the foregoing provisions of our statutes.

The judgment of the trial court is reversed, and the action of respondents dismissed.

TOLMAN, MITCHELL, MILLARD, and STEINERT, JJ., concur.