**Frankie R. MELDER, Appellant,**

v.

**PHILLIPS PIPE LINE COMPANY, Appellee.**

**Francis A. RECH et ux., Appellants,**

v.

**PHILLIPS PIPE LINE COMPANY, Appellee.**

**Nos. 12450, 12451.**

Court of Civil Appeals of Texas, Austin.

July 21, 1976.

Rehearing Denied Aug. 18, 1976.

---

**3.** Stoebuck, The Property Right of Access Versus the Power of Eminent Domain, 47 Tex.L. Rev., No. 5, p. 733.

Terrence Kendall, Kendall, Randle, Finch & Osborn, Austin, for appellants, Frankie R. Melder, Francis A. Rech et ux.

Kent M. Rider, Stayton, Maloney, Hearne & Babb, Austin, for appellee.

PHILLIPS, Chief Justice.

This is an easement case. Appellant Frankie R. Melder and appellants Francis A. Rech and Anna M. Rech filed separate actions against appellee Phillips Pipe Line Company for damages sustained when Phillips replaced an existing pipeline that traversed their respective lands with a new pipeline constructed parallel to, but fifteen feet north of the previously existing line.

The facts and issues in the two cases being similar, they were heard jointly by the trial court without a jury. The trial court entered take-nothing judgments against appellants in both cases, and both appeals, having been consolidated by this Court, are now before us for review. We affirm the judgment of the trial court.

The parties have stipulated to many of the relevant facts. Miss Melder is the owner of 27.45 acres of land in Travis County

which is subject to an easement granted by one of her predecessors in title to Shell Pipe Line Company in 1928. Mr. and Mrs. Rech are the owners of 10.69 acres of land in Travis County subject to an easement granted to Shell by one of their predecessors in title in 1929. Shell subsequently assigned a pipeline it had built over these and other lands pursuant to such easements to Phillips, along with the right to repair and/or replace the line. In 1973 Phillips replaced the line and these suits seeking damages were filed.

■ The question presented by these appeals is whether the appellants can recover for damages to their lands under the easement deeds, which provide that the grantee and its assigns are obligated "to pay any damages which may arise to *crops, timber, fences* or buildings" due to the use by grantee and its assigns of the easement.[1]

The trial court found that during the construction, Phillips removed various trees from appellants' lands and the reasonable fair market value of the lands was diminished thereby.

It is undisputed that grass and ground cover were also removed, that a portion of a low stone wall was removed from Miss Melder's tract, and that caliche was turned up from the ditch dug for the pipe which covered areas of the previously existing topsoil.

Nonetheless, the trial court found that appellants "suffered no damage to any crops, timber, fences or buildings situated on their property as the result of the acts of Defendant, Phillips Pipe Line Company, in replacing its pipeline across that land at a different location from its existing pipeline."

The primary question presented by this appeal is whether the trial court erred in holding that appellants suffered no damage to any crops, timber, fences or buildings

situated on their properties as a result of the replacing of the pipeline across their respective lands. We agree with the trial court that they did not. Naturally growing grass, ground cover, and brush are not crops. Proof was not made that the various trees destroyed were timber in the generic sense; neither is a low rock wall twelve to eighteen inches in height and twelve to fifteen feet in length, used to reduce soil erosion, a fence.

■ Words used in a contract are to be given their ordinary and accepted meaning. *Lilac Variety, Inc. v. Dallas Texas Company*, 383 S.W.2d 193 (Tex.Civ.App.1964, writ ref'd n. r. e.); *Fox v. Thoreson*, 398 S.W.2d 88 (Tex.1966).

■ With respect to the definition of *crops*, the courts have held that natural grasses, shrubs and trees are not considered in law to be growing crops. *Union Producing Co. v. Allen*, 297 S.W.2d 867 (Tex.Civ.App.1957, no writ); *Wohlford v. American Gas Production Co.*, 218 F.2d 213 (5th Cir.1955). *Union Producing Co., supra,* defines growing crops as all plants which are planted and cultivated. The natural grasses, ground cover, and shrubs destroyed in the cases at bar do not fit this definition. Also see *Wohlford v. American Gas Production Co., supra.*

The word "timber" has been generally defined as meaning growing trees suitable to be used for the construction of building, tools, utensils, furniture, fences, ships, etc. This concept of timber distinguishes it from saplings, and undergrowth, fruit trees, and trees suitable only for firewood or cordwood, or for decoration. 52 Am.Jur.2d Logs and Timber § 1 (1970). Also see 72 A.L.R.2d 727, 730, 732 (1960); 161 A.L.R. 549 (1946). *Black's Law Dictionary* defines "timber" as "wood felled for building or other such like use."[2] *Webster* defined

---

1. There is no question before us as to any negligence on the part of *Phillips* in constructing the pipeline; so, damages, if any, can be found only under the provisions of the contract between the parties quoted above. In this connection see: *Shell Pipe Line Corp. v. Coston*, 35 S.W.2d 1056 (Tex.Civ.App.1931, no writ).

2. *Black's Law Dictionary*, p. 1653 (4th ed. 1968).

"timber" as "lumber,"[3] and the *American Heritage Dictionary* defines it as "1. trees or wooded land considered as a source of wood. 2a. Wood as a building material; lumber."

Among the trees which appellants allege were removed from the 50-foot wide easement strip, the cedar and oak might or might not have been useful for the construction of buildings, fence posts, or other items made from wood. However, appellants neither pleaded nor proved that any of these trees were suitable for such uses; nor is there any evidence in the record concerning the amount of timber destroyed, or its value. Appellants offered instead evidence of the value of the trees for shade and ornamentation, and the reduction in the value of their land as a consequence of their removal. Growing trees, valuable for shade or ornamentation, or for fruit, are not considered to be timber in the generally accepted use of the word. See *Cummer-Graham Co. v. Maddox*, 155 Tex. 284, 285 S.W.2d 932 (1956). The trial court was correct in finding that no timber had been destroyed.

We are also of the opinion that the low rock wall approximately one and one-half feet high by twelve to fifteen feet in length, will not come under the definition of a fence as contemplated by the contract.

In *Mutual Lumber Co. v. Sheppard*, 173 S.W.2d 494 (Tex.Civ.App.1943, no writ), this Court stated: "A fence is an inclosure about a field or other space, or about any object, and is especially an inclosing structure of wood, iron, or other material, intended to prevent intrusion from without or straying within." (citing cases) This definition comports with the definition of a fence generally given in the standard usage dictionaries. The low rock wall which was described in the testimony as having been erected to prevent soil erosion is usually referred to as a retaining wall; however, it is not, in general usage, considered to be a fence.

The judgment of the trial court is in all things affirmed.

Affirmed